UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ALANA SHULTZ,                                      :
                                                   :
                Plaintiff,     :   Civil Action No. 15-cv-07473
                                                   :
      v.                                           :
                                                   :   **AMENDED COMPLAINT**
CONGREGATION SHEARITH ISRAEL OF                    :
THE CITY OF NEW YORK, THE SPANISH                  :
AND PORTUGUESE SYNAGOGUE; MEIR                     :   **Jury Trial Demanded**
SOLOVEICHIK, in his personal and professional      :
capacities; and MICHAEL LUSTIG, in his             :
personal and professional capacities,              :
                                                   :
                Defendants.    :
------------------------------------------------------------ X

Plaintiff Alana Shultz ("Plaintiff" or "Ms. Shultz"), for her Amended Complaint against Defendants Congregation Shearith Israel of the City of New York, The Spanish and Portuguese Synagogue ("Shearith Israel" or the "Congregation"), Rabbi Meir Soloveichik ("Rabbi Soloveichik") and Michael Lustig ("Mr. Lustig") (collectively, "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.     Founded in 1654, Congregation Shearith Israel is the oldest Jewish congregation in the United States. Located at Central Park West and 70th Street in New York City, the members of this elite, self-described "welcoming, traditional community" include scholars, politicians and forward-thinking modern leaders. Unfortunately, this Complaint demonstrates the ugly truth that the individuals selected by the Congregation to lead this prestigious institution into the future have failed miserably in their attempt to merge traditional Judiasm with modern civil laws.

1

2. As detailed below, Rabbi Soloveichik and Congregation Board member, Defendant Lustig, intentionally and unlawfully terminated Plaintiff, a dedicated and long-term employee of the Congregation, immediately after learning that when her Orthodox marriage ceremony was performed, she was also pregnant.

3. Shockingly, rather than demonstrating inclusion and tolerance, Defendants callously fired Ms. Shultz for her apparent failure to adhere to their religious morals, at a time when she was at her most vulnerable – six and a half months pregnant, visibly showing and in critical need of medical insurance.

4. Evidencing their undeniable guilt, in an attempt at silencing her, Defendants asked Ms. Shultz, in exchange for a paltry six weeks of pay, to sign a full release of any potential claims, as well as an agreement that she not speak derogatorily about the Congregation. Ms. Shultz, knowing that she had been treated unlawfully, declined the Congregation's "offer" as she refused to be silenced.

5. Once Ms. Shultz retained legal counsel to advocate on her behalf, Defendants attempted to "un-fire" her and reinstate her to a position that they allegedly previously needed to "eliminate" as part of a restructuring. Sadly, this attempt to "re-hire" Ms. Shultz was not a decision made after reflection and atonement, but rather was a thinly-veiled attempt to mitigate Defendants' exposure for their blatant discriminatory and unlawful conduct.

6. Immediately following the filing of this action, in a desperate attempt to cover up the unlawful termination based on her pregnancy, Defendants sent an email to more than 500 members of the Congregation publicly denouncing Ms. Shultz's claims and falsely stating that she remains a current employee. Such conduct, however, is simply more evidence of the Congregations's attempts to bully and intimidate Ms. Shultz into silence.

7.     Fortunately, the federal, state and city pregnancy discrimination laws were enacted to protect those most vulnerable to intolerant, unjust acts, such as Plaintiff, against those in positions of unequal power in the workplace, including religious institutions.

8.     This action seeks to fully vindicate Plaintiff's rights and to hold accountable those individuals who placed their moral and religious beliefs above the civil laws of society.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA").  This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

11.    Plaintiff Alana Shultz is a female former employee of the Congregation.  Ms. Shultz was terminated from her position as Program Director at the Congregation's 2 West 70th Street, New York, NY 10023 location on July 21, 2015.  She is a resident of the State of New York and at all relevant times met the definition of an employee and/or eligible employee under all applicable statutes.

12.    Defendant Congregation Shearith Israel of the City of New York, The Spanish and Portuguese Synagogue is a New York corporation, located at 2 West 70th Street, New York, NY 10023.  At all relevant times, Shearith Israel was an employer within the meaning of all applicable statutes.

13. Defendant Meir Soloveichik is and has been, at all relevant times, a Rabbi of Congregation Shearith Israel.  He is a resident of the State of New York.  In his capacity as Rabbi, Defendant Soloveichik has exercised sufficient control of the Congregation and its employees, and specifically decisions related to personnel, such that he has been at all relevant times Plaintiff's employer under all applicable laws.

14. Defendant Michael Lustig is and has been, at all relevant times, a member of the Board of Directors (the "Board") of Congregation Shearith Israel.  He is a resident of the State of New York.  In his capacity as a Board member, Defendant Lustig has exercised sufficient control of the Congregation and its employees, and specifically decisions related to personnel, such that he has been at all relevant times Plaintiff's employer under all applicable laws.

## ADMINISTRATIVE PROCEDURES

15. Ms. Shultz filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 10, 2015.  Immediately upon receiving the notice of a right to sue from the EEOC ("Right to Sue"), Plaintiff will promptly amend this Complaint to add federal claims of discrimination.

16. Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

17. Any and all other prerequisites to the filing of this suit have been met.

## **PROCEDURAL HISTORY**

18. This action was commenced on September 22, 2015. (Dkt. No. 1).

19. The complaint was served on Defendants on September 24, 2015. (Dkt. Nos. 11-13).

## **FACTUAL ALLEGATIONS**

20. Since 2004, Ms. Shultz has worked at the Congregation as its Program Director, planning and coordinating events throughout the year, as well as organizing the nursery school program, youth activities and numerous holiday celebrations.

21. Over the past eleven years, Ms. Shultz was a passionate and dedicated employee, who treated the Congregation like mishpoke, an extended family, and devoted countless hours to Shearith Israel.

22. Throughout her employment, Ms. Shultz consistently received positive reviews relating to her performance, and among present employees, her tenure at the Congregation was one of the longest.

23. In addition to Ms. Shultz's work at the Congregation, she is active in the Jewish community. For instance, she was the 2012 recipient of the Jewish International Connection New York Dedication to Jewish Life Award and was recognized by American Jewish Life Magazine (November 2007) as one of Six Who Matter in the Jewish Community. Ms. Shultz has a Masters degree in Jewish Studies, focusing on Jewish Art and Material Culture, from the Jewish Theological Seminary.

24. As a result of her time and efforts, Ms. Shultz was intimately involved in the community, well-respected and known by the majority of the Congregation.

25. Therefore, in the spring of 2015, when news of Ms. Shultz's engagement spread throughout the Congregation, she received messages of congratulations and blessings by countless members. In fact, news of the engagement was published on the Congregation's website.

26. On June 28, 2015, in an Orthodox ceremony, Ms. Shultz and her husband were married. At that time, Ms. Shultz was pregnant.

27. On June 30, 2015, immediately before leaving for her honeymoon, Ms. Shultz told her supervisor, Barbara Reiss ("Ms. Reiss"), the Congregation's Executive Director, that she was pregnant, and asked that Ms. Reiss inform the Rabbis of her pregnancy. At that time, Ms. Reiss expressed her happiness for Ms. Shultz.

### Ms. Shultz's Unlawful Termination

28. Ms. Shultz returned from her honeymoon on July 20, 2015.

29. On July 21, 2015, the *very next day*, Ms. Shultz was terminated by Rabbi Soloveichik, Ms. Reiss and Board member Michael Lustig.

30. Specifically, early in the day on July 21, 2015, Ms. Reiss asked Ms. Shultz about her pregnancy and they spoke in detail about it. At that time, Ms. Shultz was approximately six months pregnant and visibly showing.

31. Later that afternoon, Ms. Reiss asked Ms. Shultz to meet with her, Rabbi Soloveichik and Mr. Lustig.

32. When Ms. Shultz entered Rabbi Soloveichik's office, he had his head turned to the side, looking away from her. Callously, Rabbi Soloveichik thereafter intentionally refused to look at, speak to or acknowledge in any way Ms. Shultz throughout the entire meeting.

33. Ms. Reiss began the meeting by informing Ms. Shultz that she was terminated, effective August 14, 2015, because the Congregation was "eliminating" her position.

34. Ms. Reiss explained that due to the upcoming planned departure of Rabbi Shalom Morris, they no longer needed a Program Director.

35. This was the first time that Ms. Shultz had heard about an alleged "restructuring." During the meeting, no explanation was provided regarding the basis for eliminating the position of Program Director nor were any details provided surrounding the purported "restructuring" at the Congregation.

36. Ms. Shultz was shocked and saddened to hear this unexpected news and confused as to how the Congregation would function without a coordinator of events and holiday activities, not to mention the nursery school and youth programs.

37. After hearing that she was fired, Ms. Shultz pointed out that being fired when she was pregnant and visibly showing would make it extremely difficult, if not impossible, to obtain a new job. This statement was met with complete silence from Rabbi Soloveichik and Mr. Lustig.

38. In fact, Rabbi Soloveichik continued to refuse to look at or acknowledge Ms. Shultz's presence. Defendant Lustig similarly refused to speak to Ms. Shultz.

39. Clearly, Defendants were not concerned with the obvious damages caused by eliminating medical insurance coverage for a woman who was pregnant and nearing childbirth.

### Defendants' Attempt to Force Ms. Shultz to Waive Her Legal Rights

40. Immediately subsequent to her termination notice, Ms. Reiss presented Ms. Shultz with a purported "severance" agreement. This agreement attempted to convince Ms. Shultz to

7

waive her rights to sue the Congregation or speak ill of it in exchange for a mere 6 weeks of pay. Further, there was no offer for Ms. Shultz to continue to receive medical benefits past 6 weeks.

41. Shamefully, Defendants simultaneously provided Ms. Shultz with an extensive, detailed list of assignments and work items that she was told to "complete" on or before August 14, 2015.

42. As evident to Ms. Shultz, the list included many of her regular and customary work assignments that Defendants simply wanted her to complete ahead of schedule. The list also included tasks that Ms. Shultz knew were intended to help transition another employee into taking over her responsibilities.

43. Because Ms. Shultz cared deeply for the members of the Congregation, she obediently began trying to complete as much work as possible over the next few weeks.

44. However, Ms. Shultz also recognized that the purported elimination of her position was a pretextual excuse to terminate her because the Defendants disapproved of the fact that she was pregnant at the time of her marriage. In this regard, Ms. Shultz retained counsel to protect her statutorily protected rights.

## **Defendants' Attempt to "Un-Fire" Ms. Shultz**

45. Immediately after learning that Ms. Shultz had retained legal counsel, Defendants, in a thinly-veiled attempt to back track on their discriminatory conduct, tried to "un-fire" Ms. Shultz.

46. Specifically, Defendants sent Ms. Shultz a letter on August 5, 2015, that allegedly "reinstated" her to the position of Program Director – the very position that Defendants claimed necessitated an elimination as part of an overall "restructuring."

47.     Unfortunately, any attempt to undo the discriminatory conduct by forcing her to work under the direct supervision of the very individuals who discriminated against her fails pursuant to well-settled law.  Moreover, it is clear that the Defendants are not offering Ms. Shultz her position back based on repentance or a realization that it was the wrong thing to do, but have extended an offer of employment in a blatant attempt to potentially mitigate exposure for their wrongful conduct.

48.     Moreover, from July 21, 2015, until her last day on August 14, 2015, Ms. Shultz was accutely aware that the purported rescinding of her termination was not genuine and that Defendants' beliefs that only married women should have children was not going to change.

### Retaliation for Engaging in Protected Activity

49.     On September 22, 2015, Ms. Shultz commenced this action.[1]  Subsequently, multiple news organizations published online articles about the lawsuit, with at least one newspaper posting an article as early as 1:34 p.m. on September 22, 2015. *See* http://nypost.com/2015/09/22/synagogue-worker-i-was-fired-for-having-sex-before-marriage/.

50.      On September 25, 2015, at approximately 1:47 p.m., using email address info@shearithisrael.org, the Congregation sent an email to more than 500 members of the Congregation, entitled "Synagogue Comments on Ereb Kippur Lawsuit."  In this email, Defendants made the following statements:

> Congregation Shearith Israel categorically denies Ms. Shultz's allegations of discrimination or of doing anything wrong. In addition, Congregation Shearith Israel did not terminate her employment. **She continues to remain employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along. Her claim of loss is fabricated and inaccurate. She has received (and continues to receive to this very day) every penny, including for health benefits - even though she has not been to work since August 14th**. It is unfortunate that Ms. Shultz and her lawyers took

---

[1] The complaint was served on the Defendants on September 24, 2015. (Dkt. Nos. 11-13).

advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur.

(emphasis added).

51. The Congregation's email is a blatant attempt to retaliate against Ms. Shultz for exercising her protected right to file a complaint alleging discrimination based on her gender and pregnancy.

52. Moreover, Defendants falsely portray that as of September 25, 2015, Ms. Shultz is a current employee who purportedly is collecting a salary "even though she has not been to work since August 14th."

53. The written statement, emailed to over 500 recipients, was sent with the intent to expose Ms. Shultz to contempt or aversion or generate an otherwise unsavory opinion of her in the minds of a substantial number of members of the Congregation.

54. As set forth above, on July 21, 2015, the Congregation terminated Ms. Shultz and simultaneously presented her with a severance agreement that set forth her last day of employment as August 14, 2015. On August 5, 2015, after counsel for Ms. Shultz sent the Congregation a letter of representation and stated the basis for her claims of unlawful discrimination, the Congregation attempted to "rescind" her termination.

55. Ms. Shultz recognized the fact that the offer was not a *bona fide* offer of re-hiring and rejected Defendants' attempt to mitigate their exposure.

56. At all times, Ms. Shultz continued to comply with the original terms of her termination, including working up and until August 14, 2015.

57. At all times thereafter, Ms. Shultz's employment was terminated. Since August 14, 2015, the Congregation has not employed Ms. Shultz and the public statements suggesting otherwise are false.

58. Despite the Congregation's claim that Ms. Shultz "continues to remain employed in the exact same title," its most recent newsletter published in September 2015 conspicuously omits her as a listed "staff member" along with the other employees. *See* http://shearithisrael.org/sites/default/files/2015/08/media/CSI_Bulletin_Fall_2015_final.pdf.

59. In all prior newsletters, however, her name appears as a current staff member.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of the FMLA)
*Against All Defendants*

60. Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

61. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"). At all times relevant herein, Defendants were "covered employers" within the meaning of the FMLA.

62. By the actions described above, among others, Defendants violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, *inter alia*, terminating her employment mere weeks before Plaintiff was scheduled to commence her 12-week leave to give birth and care for her newborn, an action that would clearly deter employees from exercising their rights under the FMLA.

63. As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## SECOND CAUSE OF ACTION
**(Discrimination in Violation of the NYSHRL)**
*Against All Defendants*

64. Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

65. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the New York State Human Rights Law, Article 15, § 290, *et. seq.*, ("NYSHRL") by treating her differently from and less favorably than similarly situated employees who did not become pregnant.

66. Defendants terminated Ms. Shultz within days after she provided notice to them that she was pregnant.

67. Prior to telling Ms. Shultz that an alleged restructuring was needed on July 21, 2015, the same day that she was terminated, Defendants had never discussed the need for a possible restructuring with Ms. Shultz.

68. Following her termination, Defendants told Ms. Shultz that she was expected to complete numerous assignments and tasks before she left.

69. Based on the nature of many of these work tasks, it was clear that Defendants expected her to assist in the eventual transition of another individual to her position.

70. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

71. Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

72. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107, *et seq*. ("NYCHRL"), by treating her differently from and less favorably than similarly situated employees who did not become pregnant.

73. Defendants terminated Ms. Shultz within days after she provided notice to them that she was pregnant.

74. Prior to telling Ms. Shultz that an alleged restructuring was needed on July 21, 2015, the same day that she was terminated, Defendants had never discussed the need for a possible restructuring with Ms. Shultz.

75. Following her termination, Defendants told Ms. Shultz that she was expected to complete numerous assignments and tasks before she left.

76. Based on the nature of many of these work tasks, it was clear that Defendants expected her to assist in the eventual transition of another individual to her position.

77. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

78. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of NYSHRL and NYCHRL)
*Against Defendant Soloveichik and Defendant Lustig*

79. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

80. Defendant Soloveichik and Defendant Lustig directly participated in the discriminatory conduct perpetrated against Plaintiff, including, but not limited to, the termination of Plaintiff's employment.

81. At all relevant times, Defendant Soloveichik and Defendant Lustig supervised Plaintiff and/or had the ability to control the terms and conditions of her employment, including, but not limited to, the power to terminate Plaintiff's employment.

82. As a direct and proximate result of the unlawful and discriminatory conduct committed by Defendant Soloveichik and Defendant Lustig in violation of the NYSHRL and NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

83. Defendant Soloveichik's and Defendant Lustig's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

84. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

85. By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYSHRL by, *inter alia*, publicly sending an email to more than 500 members of the Congregation stating that Ms. Shultz's complaints are false and that she is a current employee who, as of September 25, 2015, is "employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along," when Defendants knew, or should have known, that she was no longer employed at the Congregation after August 14, 2015.

86. Defendants sent this email on September 25, 2015, after Ms. Shultz had filed her complaint in this action.

87. Defendants further retaliated against Ms. Shultz by stating in the same email that "Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur." Although Defendants were under no obligation to respond publicly, reports of the lawsuit were widespread by early afternoon on September 22, 2015, leaving hours prior to sunset, at approximately 6:54 p.m.

88. This statement is further conduct evidencing Defendants' attempt to retaliate against Plaintiff for engaging in protected activity.

89. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

90. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

### SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
*Against All Defendants*

91. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

92. By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYCHRL by, *inter alia*, publicly sending an email more than 500 members of the Congregation stating that Ms. Shultz's complaints are false and that she is a current employee who, as of September 25, 2015, is "employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along," when Defendants knew, or should have known, that she was no longer employed at the Congregation after August 14, 2015.

93. Defendants sent this email on September 25, 2015, after Ms. Shultz had filed her complaint in this action.

94. Defendants further retaliated against Ms. Shultz by stating in the same email that "Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur." Although Defendants were under no obligation to respond publicly, reports of the lawsuit were widespread by early afternoon on September 22, 2015, leaving hours prior to sunset, at approximately 6:54 p.m.

16

95. This statement is further conduct evidencing Defendants' attempt to retaliate against Plaintiff for engaging in protected activity.

96. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

97. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

98. Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
**(Defamation)**
*Against All Defendants*

99. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

100. By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYCHRL by, *inter alia*, publicly sending an email to more than 500 members of the Congregation stating that Ms. Shultz's claims are false and that:

> Congregation Shearith Israel did not terminate her employment. **She continues to remain employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along. Her claim of loss is fabricated and inaccurate. She has received (and continues to receive to this very day) every penny, including for health benefits - even though she has not been to work since August**

17

**14th**. It is unfortunate that Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur.

101.	Defendants sent this email on September 25, 2015 and knew, or should have known, that she was no longer employed at the Congregation after August 14, 2015.

102.	Further, Defendants sent this email on September 25, 2015, after Ms. Shultz had filed her complaint in this action.

103.	The written statement was made with ill-will and reckless disregard towards Ms. Shultz.

104.	The written statement was published with the intent to expose Ms. Shultz to contempt or aversion or generate an otherwise unsavory opinion of her in the minds of a substantial number of members of the Congregation, and to cause injury to her reputation.

105.	As a direct and proximate result of Defendants' unlawful defamation, Plaintiff has suffered injury and harm, including but not limited to harm to her reputation, and continues to suffer mental and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A.	A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of New York and the City of New York;

B.	An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

    C.    An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

    D.    An award of punitive damages in an amount to be determined at trial;

    E.    An award of liquidated damages in an amount to be determined at trial;

    F.    Prejudgment interest on all amounts due;

    G.    An award of Plaintiff's reasonable attorneys' fees and costs; and

    H.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: September 29, 2015
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _/s/ Jeanne Christensen_
Douglas H. Wigdor
Jeanne M. Christensen
Bryan L. Arbeit

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
jchristensen@wigdorlaw.com
barbeit@wigdorlaw.com

*Counsel for Plaintiff*