**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

| | | |
|---|---|---|
| ALANA SHULTZ, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 15-cv-07473 |
| | : | |
| v. | : | |
| | : | **THIRD AMENDED COMPLAINT** |
| CONGREGATION SHEARITH ISRAEL OF | : | |
| THE CITY OF NEW YORK, THE SPANISH | : | |
| AND PORTUGUESE SYNAGOGUE; MEIR | : | **Jury Trial Demanded** |
| SOLOVEICHIK, in his personal and professional | : | |
| capacities; MICHAEL LUSTIG, in his personal | : | |
| and professional capacities; and BARBARA | : | |
| REISS, in her personal and professional | : | |
| capacities, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------- X

Plaintiff Alana Shultz ("Plaintiff" or "Ms. Shultz"), for her Third Amended Complaint against Defendants Congregation Shearith Israel of the City of New York, The Spanish and Portuguese Synagogue ("Shearith Israel" or the "Congregation"), Rabbi Meir Soloveichik ("Rabbi Soloveichik"), Michael Lustig ("Mr. Lustig"), and Barbara Reiss ("Ms. Reiss") (collectively, "Defendants"), hereby alleges as follows:

<u>**NATURE OF THE CLAIMS**</u>

1. Founded in 1654, Congregation Shearith Israel is the oldest Jewish congregation in the United States. Located at Central Park West and 70th Street in New York City, the members of this elite, self-described "welcoming, traditional community" include scholars, politicians and forward-thinking modern leaders. Unfortunately, this action demonstrates the ugly truth that the individuals selected by the Congregation to lead this prestigious institution into the future have failed miserably in their attempt to merge traditional Judaism with modern civil laws.

2.      As detailed below, on July 21, 2015, Rabbi Soloveichik, together with Mr. Lustig, a member of the Congregation's Board of Trustees, and Ms. Reiss, the Executive Director, intentionally and unlawfully terminated Ms. Shultz, a dedicated long-term employee of the Congregation, after learning she was pregnant before marriage.

3.      Shockingly, rather than demonstrating inclusion and tolerance, Defendants callously fired Ms. Shultz for her apparent failure to adhere to *their* religious morals, at a time when she was at her most vulnerable – visibly pregnant and in critical need of medical insurance. Indeed, Ms. Shultz was not a member of the Congregation, and Defendants were fully aware when Ms. Shultz was hired that she was not a member of *any* orthodox congregation.

4.      Simultaneous with her firing, in exchange for a paltry six weeks of pay, Defendants presented Ms. Shultz with an agreement to release all of her potential legal claims against the Congregation, including claims relating to gender and pregnancy discrimination. This attempt to silence her also included a provision that she not speak derogatorily about the Congregation.

5.      Ms. Shultz, knowing that she had been treated unlawfully, refused to be silenced and rejected the Congregation's agreement.  Instead, she hired legal counsel to advocate on her behalf.

6.      Absurdly, immediately after learning that Ms. Shultz had retained legal counsel, Defendants attempted to "un-fire" her and reinstate her to a position that they allegedly previously needed to "eliminate" as part of a restructuring.

7.      In fact, the Congregation has shamelessly attempted to pretend that it committed no wrong when it terminated Ms. Shultz, and that the offer of reinstatement is genuine.

8.    Sadly, this attempt to "re-hire" Ms. Shultz was not a decision made after reflection and atonement, but rather was a thinly-veiled attempt to mitigate Defendants' exposure for their blatant discriminatory and unlawful conduct once lawyers intervened on her behalf.

9.    Immediately following the commencement of this action, in a desperate attempt to cover up the unlawful termination based on her pregnancy, Defendants sent an email to more than 500 members of the Congregation publicly denouncing Ms. Shultz's claims and falsely stating that she was a current employee.  Such conduct, however, is simply more evidence of the Congregations' attempts to bully and intimidate Ms. Shultz into silence.

10.    The Congregation falsely represented in this email that it was surprised by the timing of the legal action and unable to respond to the complaint due to Yom Kippur, when in fact the Congregation and its counsel were on notice for weeks prior to the commencement of the action.

11.    More troubling, however, is the Congregation's intentional and relentless retaliation against Ms. Shultz following the commencement of this case.  Despite multiple objections from Ms. Shultz, the Congregation has continued with its sham story of continued employment of Ms. Shultz through a series of wrongful and damaging conduct, including but not limited to:

- Sending bi-weekly paychecks from the Board to Ms. Shultz's counsel who promptly returns the checks, un-cashed, back to Defendants;
- Telling Ms. Shultz that she was terminated and needed to obtain her own medical insurance, which she in fact obtained, while the Congregation knowingly kept her on their health plan;
- In defiance of Ms. Shultz's objection, unlawfully continuing to post her photograph and biographical information on the Congregation's website, falsely representing to the public that she is employed there; and
- Most recently, causing the New York State unemployment insurance board to inform Ms. Shultz that the Congregation is representing that she is still working there and as such, she cannot receive unemployment benefits.

12.     The appalling tactics that the Congregation has resorted to in order to damage and defeat Ms. Shultz shows a religious institution willing to flout civil protections that exist to protect women from unfair, discriminatory treatment.   Under the guise of "tradition," the Congregation has flagrantly made Ms. Shultz an example of what members, especially female members, should expect if they dare to non-conform to orthodox teachings.

13.     Fortunately, the federal, state and city pregnancy discrimination laws were enacted to protect those most vulnerable to intolerant, unjust acts, such as Ms. Shultz, against those in positions of unequal power in the workplace, including religious institutions.

14.     This action seeks to fully vindicate Ms. Shultz's rights and to hold accountable those individuals who placed their moral and religious beliefs above the civil laws of society.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA") and Title VII of the Civil Rights Act of 1964 ("Title VII").   This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## EEOC FILING AND ADMINISTRATIVE PROCEDURES

17.     Ms. Shultz filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 10, 2015.   On January 29, 2016, the EEOC issued a  notice of a right to sue.

18.     A copy of the Complaint in this action has been served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

19.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

20.     Plaintiff Alana Shultz is a female former employee of the Congregation.  Ms. Shultz was terminated from her position as Program Director at the Congregation's 2 West 70th Street, New York, NY 10023 location on July 21, 2015.  She is a resident of the State of New York and at all relevant times met the definition of an employee and/or eligible employee under all applicable statutes.

21.     Defendant Congregation Shearith Israel of the City of New York, The Spanish and Portuguese Synagogue is a New York corporation, located at 2 West 70th Street, New York, NY 10023.  At all relevant times, Shearith Israel was an employer within the meaning of all applicable statutes.

22.     Defendant Meir Soloveichik is and has been, at all relevant times, a Rabbi of Congregation Shearith Israel.  He is a resident of the State of New York.  In his capacity as Rabbi, Defendant Soloveichik has exercised sufficient control of the Congregation and its employees, and specifically decisions related to the hiring and firing of personnel, including the right to fire Ms. Shultz, such that he has been at all relevant times Plaintiff's employer under all applicable laws.

23.     Defendant Michael Lustig is and has been, at all relevant times, a member of the Board of Trustees (the "Board") of Congregation Shearith Israel.  He is a resident of the State of

New York. In his capacity as a Board member, Defendant Lustig has exercised sufficient control of the Congregation and its employees, and specifically decisions related to the hiring and firing of personnel, including the right to fire Ms. Shultz, such that he has been at all relevant times Plaintiff's employer under all applicable laws.

24.     Defendant Barbara Reiss is and has been, at all relevant times, the Executive Director of the Congregation and a supervisor of Ms. Shultz. She reports to Defendant Soloveichik and to the Board of Trustees. She is a resident of the State of New York. In her capacity as the Executive Director, Defendant Reiss has exercised sufficient control of the Congregation and its employees, and specifically decisions related to the hiring and firing of personnel, including the right to fire Ms. Shultz, such that she has been at all relevant times Plaintiff's employer under all applicable laws.

## FACTUAL ALLEGATIONS

25.     Since 2004, Ms. Shultz has worked at the Congregation as its full-time Program Director, planning and coordinating events throughout the year, as well as helping to organize the nursery school program, youth activities and numerous holiday celebrations.

26.     When Ms. Shultz was hired, the Congregation was fully aware that she was not orthodox.

27.     At all relevant times, Ms. Shultz was not a "member" of Shearith Israel's Congregation.

28.     Over the past eleven years, Ms. Shultz performed her work as a passionate and dedicated employee, who treated the Congregation like mishpoke, an extended family, and devoted countless hours to Shearith Israel.

29.     At all relevant times, in her full-time position, Ms. Shultz regularly and generally worked forty (40) hours per week.

30.     On an as needed basis, including during Jewish holidays and other special events at the Congregation, Ms. Shultz worked in excess of forty (40) hours per week, including working weekends and late into the evening.

31.     In addition to Ms. Shultz's prior work at the Congregation, she was, and continues to be, active in the Jewish community.  For instance, she was the 2012 recipient of the Jewish International Connection New York Dedication to Jewish Life Award and was recognized by American Jewish Life Magazine (November 2007) as one of Six Who Matter in the Jewish Community.  Ms. Shultz has a Masters degree in Jewish Studies, focusing on Jewish Art and Material Culture, from the Jewish Theological Seminary.

32.     Ms. Shultz was paid an annual salary and not on an hourly basis.

33.     Ms. Shultz was paid by the "Trustees of the Congregation Shearith Israel."

34.     At all relevant times, Ms. Shultz reported to Defendant Reiss, as well as the Rabbis.  In July 2015, the Congregation employed four Rabbis: Defendant Soloveichik; Rabbi Richard Hidary; Rabbi Marc Angel; and Rabbi Ira Rhode.

35.     Upon information and belief, the Rabbis are hired and the terms of their respective employments are controlled by the Board.

36.     Upon information and belief, the Executive Director is hired and the terms of her employment, are controlled by the Rabbis and the Board.

37.     As such, the Rabbis, Defendant Reiss and the Board, including Defendant Lustig, had the power and ability to modify the terms of Ms. Shultz's employment, including the power to fire her or otherwise subject her to adverse employment actions.

38.     At all relevant times, the Congregation employed multiple employees, including but not limited to: (i) office administrative staff, including payroll and accounting staff; (ii) individuals who organized and taught at the Congregation's nursery school and summer program; (iii) individuals who organized and led youth programs, including afterschool and summer programs; (iv) individuals responsible for the maintenance and repair of the synagogue and other physical property owned and attached to the synagogue; (iv) security personnel; (v) paid individuals who regularly performed in the choir for weekly services and special events; and (vi) various employees responsible for the Congregation's finances, including fundraising efforts.

39.     As such, upon information and belief, the Congregation currently employs more than 50 employees in 20 or more workweeks in the current or preceding 12 month period within a 75 mile radius.

### Rabbi Soloveichik's Conservative Orthodox Views

40.     According to the Congregation's website, http://shearithisrael.org/content/about, Shearith Israel, "was founded in 1654, the first Jewish congregation to be established in North America."

41.     Further, the website explains that from its founding through the present, "the membership is diverse," and is composed of "both Sephardic and Ashkenazi members."

42.     Although sex between two unmarried people is not included in the Torah's lists of forbidden sexual practices, upon information and belief, Orthodox Jewish law, as practiced by Sephardic and Ashkenazi members, traditionally forbids sex outside of the context of marriage.

43.     Further, upon information and belief, Jewish law requires that sexual relations with a woman are sanctioned only after a properly conducted marriage ceremony.

44.     Upon information and belief, Rabbi Soloveichik, even as compared to other Jewish scholars who identify as "orthodox," is considered to be conservative.

45.     A writer and scholar on Orthodox Judaism, Rabbi Soloveichik is widely published and in 2012, he gave the invocation at the opening of the Republican National Convention.

46.     In fact, during Rabbi Soloveichik's 2012 Republican National Convention invocation speech, he stated that **"our liberties are Your gift, God, not that of government, and that we are endowed with these rights by You, our creator, not by mortal man."**

47.     Upon information and belief, in January 2012, Rabbi Soloveichik joined a group of prominent conservative bioethicists in an *amicus* brief opposing stem-cell research.

48.     Just one month later, he testified before Congress against the Obama Administration's mandate requiring Catholic employers to provide contraception coverage.

49.     Upon information and belief, he co-authored a Wall Street Journal op-ed with prominent Christian leaders deeming the contraception coverage mandate an "infringement" on religious liberty.   It is unclear whether Rabbi Soloveichik approves of modern fertility procedures, including but not limited to, *in vitro* fertilization.

### Ms. Shultz's Unlawful Termination

50.     Throughout her employment, Ms. Shultz consistently received positive reviews relating to her performance, and among those employees working in July 2015, her eleven year tenure at the Congregation was one of the longest.

51.     As a result of her time and efforts, Ms. Shultz was intimately involved in the community, well-respected and known by the majority of the Congregation.

52.     Therefore, in the spring of 2015, when news of Ms. Shultz's engagement spread throughout the Congregation, she received messages of congratulations and blessings from

countless members. In fact, news of the engagement was published on the Congregation's website.

53. On June 28, 2015, in an orthodox ceremony that was not conducted at Shearith Israel or had any connection to the Congregation, Ms. Shultz and her husband were married. At that time, Ms. Shultz was pregnant.

54. On June 30, 2015, immediately before leaving for her honeymoon, Ms. Shultz told her supervisor, Defendant Reiss, that she was pregnant, and asked that Defendant Reiss inform the Rabbis of her pregnancy.

55. At that time, Ms. Reiss expressed her happiness for Ms. Shultz.

56. Ms. Shultz returned from her honeymoon on July 20, 2015.

57. On July 21, 2015, the *very next day*, Ms. Shultz was terminated by Rabbi Soloveichik, and Defendants Reiss and Lustig.

58. Specifically, early in the day on July 21, 2015, Defendant Reiss asked Ms. Shultz about her pregnancy and they spoke in detail about it. At that time, Ms. Shultz was already visibly pregnant.

59. Later that afternoon, Defendant Reiss asked Ms. Shultz to meet with her, Rabbi Soloveichik and Defendant Lustig.

60. When Ms. Shultz entered Rabbi Soloveichik's office, he had his head turned to the side, looking away from her despite the fact that she was sitting facing his desk and in close proximity. Callously, Rabbi Soloveichik thereafter intentionally refused to look at, speak to or acknowledge in any way Ms. Shultz throughout the entire meeting, and only looked at and spoke to Defendants Reiss and Lustig.

61.     Rabbi Soloveichik's refusal to speak to Ms. Shultz, together with his body language, unequivocally demonstrated to Ms. Shultz how much he detested and disapproved of her pregnant status prior to marriage.

62.     In Rabbi Soloveichik's office, Defendant Reiss told Ms. Shultz that she was terminated, effective August 14, 2015, because the Congregation was "eliminating" her position.

63.     Defendant Reiss explained that due to the upcoming planned departure of Rabbi Shalom Morris, they no longer needed a Program Director.

64.      This was the first time that Ms. Shultz had heard about an alleged "restructuring." During the meeting, no explanation was provided regarding the basis for eliminating the position of Program Director nor were any details provided surrounding the purported "restructuring" at the Congregation.

65.     Ms. Shultz was shocked and saddened to hear this unexpected news and confused as to how the Congregation would function without a coordinator of events and holiday activities, not to mention the nursery school and youth programs.

66.     After hearing that she was fired, Ms. Shultz pointed out that being fired when she was pregnant and visibly showing would make it extremely difficult, if not impossible, to obtain a new job.  This statement was met with complete silence from the Defendants.

67.     In fact, Rabbi Soloveichik continued to refuse to look at or acknowledge Ms. Shultz's presence.  Defendant Lustig similarly refused to speak to Ms. Shultz.

68.     Clearly, Defendants were not concerned with the obvious damages caused by eliminating medical insurance coverage for a woman who was pregnant and nearing childbirth.

**Defendants' Attempt to Force Ms. Shultz to Waive Her Legal Rights**

69.     Simultaneous with her termination on July 21, 2015, Defendant Reiss presented Ms. Shultz with a purported "severance" agreement.  This agreement attempted to convince Ms. Shultz to waive her rights to sue the Congregation or speak ill of it in exchange for a mere 6 weeks of pay.  Further, there was no offer for Ms. Shultz to continue to receive medical benefits past 6 weeks.

70.     The proposed agreement included a complete waiver of Ms. Shultz's right to commence an action for pregnancy or gender discrimination or a claim pursuant to the FMLA.

71.     The agreement was signed and executed by Defendant Reiss and cc'd to the President of the Board, Louis M. Solomon, Esq.

72.     Shockingly, despite this proposed release, Defendants made clear to Ms. Shultz that they expected her to complete numerous tasks before her final termination date on August 14, 2015, as well as help them transfer her responsibilities to other employees.

73.     By way of example only, Ms. Shultz was responsible for registration of the nursery school.  The Congregation was not intending to discontinue the nursery school program for September 2015.  As such, Ms. Shultz's responsibilities were delegated to another employee.

74.     Ms. Shultz quickly recognized that the elimination of her position was a pretextual excuse to terminate her because the Defendants disapproved of the fact that she was pregnant at the time of her marriage, and that her responsibilities and tasks as Program Director were simply being re-assigned to other employees until someone else was hired to fill her position.

75.     Accordingly, she retained counsel to protect her statutorily protected rights.

**Defendants' Attempt to "Un-Fire" Ms. Shultz**

76.     On July 30, 2015, the Congregations' counsel was notified that Ms. Shultz had retained counsel for her claims arising from gender and pregnancy discrimination.

77.     That same day, Defendant Reiss continued to discuss with Ms. Shultz the vast amount of work she expected Ms. Shultz to complete while "still here."

78.     Mere days after learning that Ms. Shultz had retained legal counsel, Defendants, in a thinly-veiled attempt to back track on their discriminatory conduct, strategically tried to "un-fire" Ms. Shultz to mitigate their legal exposure and potential damages.

79.     Specifically, Defendant Reiss presented Ms. Shultz with a letter on August 5, 2015, that allegedly "reinstated" her to the position of Program Director – the very position that Defendants claimed necessitated elimination as part of an overall "restructuring."

80.     Unquestionably, the attempt to "re-hire" Ms. Shultz was not a bona fide offer of unconditional reinstatement.

81.     Rather, it was abundantly clear to Ms. Shultz that her continued employment was conditional and would subject her to a pattern and practice of repeat discrimination by Defendant Reiss and by Defendant Soloveichik.

82.     By way of example only, on August 11, 2015, Defendant Reiss, while on the telephone and in a voice loud enough so that Ms. Shultz overheard, said *inter alia*, that she had "no problem having this [legal claim] out in the community" and that as an orthodox synagogue, Defendants "had a right" to disapprove of the fact that Ms. Shultz was pregnant before her wedding.

83.    In a further blatant effort to intimidate and scare Ms. Shultz, Defendant Reiss continued to comment that Ms. Shultz was "looking for a lottery ticket," and openly disparaged her lawyers.

84.    Upon information and belief, Defendant Lustig was the individual to whom Defendant Reiss was speaking to on the telephone.

85.    Given that Ms. Shultz had several more months of her pregnancy remaining, it was clear that Defendants would use every opportunity to berate and shame her while she was at work over the near future.

86.    Moreover, Defendants made clear that Ms. Shultz would be forced to report to Defendants Soloveichik and Reiss, who in turn reported to the Board, regardless of the undisputed fact that it was these very supervisors who discriminated against Ms. Shultz.

87.    Demonstrating further weaknesses, inconsistencies and contradictions in Defendants' proffered legitimate "re-hire,"  the Congregation in late July or August 2015, immediately began removing Ms. Shultz as a listed employee from the regularly scheduled newsletters to the membership, as well as removing her name from the employee list prominently displayed on the outside wall of the synagogue.

88.    Despite these overt acts that intentionally and deliberately conveyed to a reasonable employee, including Ms. Shultz, that Defendants wanted her to resign even before the August 14, 2015 date, Defendants disingenuously claimed that she could continue working.

89.    Indeed, Ms. Shultz's visible pregnancy served as a constant reminder to everyone in the workplace that she was pregnant prior to the date of her marriage ceremony and that in Rabbi Soloveichik's opinion, her condition was something that brought shame to the members of the Congregation.

90.     Between August 5, 2015 and August 14, 2015, Defendants' scheduled date for her termination, Defendant Reiss continued to instruct Ms. Shultz to complete tasks prior to her departure and transition responsibilities to other employees, who would perform Ms. Shultz's work once she was no longer there.

91.     Ms. Shultz was acutely aware that Defendant Reiss was frantically trying to get Ms. Shultz to simply complete her regular and customary work assignments ahead of schedule so that when August 14, 2015 arrived, Defendants were in the best possible position, including for Yom Kippur.

92.     As such, Defendants intentionally created an intolerable work environment for Ms. Shultz following her counsel's involvement and notice of claims to the Congregation.

93.     Although Ms. Shultz made clear to Defendants that she was distressed by the discrimination, she cared deeply for the members of the Congregation and obediently worked towards completing as much work as possible prior to her last day.

94.     From July 21, 2015 until her last day on August 14, 2015, Defendants Soloveichik and Lustig refused to speak to Ms. Shultz and noticeably failed to congratulate her on the pregnancy.

95.     Because Ms. Shultz's work environment was no longer tolerable, Ms. Shultz reasonably rejected the Congregation's pretextual and conditional offer of reinstatement.

96.     Defendants further attempted to cover up their unlawful conduct after Ms. Shultz left by intentionally asking other employees whether they were interested in assuming her former responsibilities but also claiming that she was on "leave."

97.     Tellingly, Defendants instructed these same employees not to contact Ms. Shultz with questions.

<u>**Retaliation for Engaging in Protected Activity**</u>

98.     Following weeks of attempted negotiations with Defendants, on September 22, 2015, Ms. Shultz commenced this action.[1]  Subsequently, multiple news organizations published online articles about the lawsuit, with at least one newspaper posting an article as early as 1:34 p.m. on September 22, 2015. *See* http://nypost.com/2015/09/22/synagogue-worker-i-was-fired-for-having-sex-before-marriage/.

99.     On September 25, 2015, at approximately 1:47 p.m., using the email address info@shearithisrael.org, the Congregation sent an email to more than 500 members of the Congregation, entitled "Synagogue Comments on Ereb Kippur Lawsuit."   In this email, Defendants made the following statements:

> Congregation Shearith Israel categorically denies Ms. Shultz's allegations of discrimination or of doing anything wrong. In addition, Congregation Shearith Israel did not terminate her employment. **She continues to remain employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along. Her claim of loss is fabricated and inaccurate. She has received (and continues to receive to this very day) every penny, including for health benefits - even though she has not been to work since August 14th.** It is unfortunate that Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur.

(emphasis added).

100.     Contrary to the email, the action was not filed "hours before Yom Kippur," and over the course of more than 6 weeks, Ms. Shultz's counsel had provided the Congregation with multiple opportunities to avoid an action.

101.     The Congregation's email claiming that Ms. Shultz remained employed and fabricated her claims is a blatant attempt to retaliate against Ms. Shultz for exercising her protected right to file a complaint alleging discrimination based on her gender and pregnancy.

---

[1]     The complaint was formally served on Defendants on the morning of September 24, 2015. (Dkt. Nos. 11-13).

102.     Moreover, Defendants falsely portrayed that as of September 25, 2015, Ms. Shultz was a current employee who was collecting a salary, even though she was terminated on August 14, 2015.

103.     Since August 14, 2015, the Congregation has not employed Ms. Shultz and the public statements suggesting otherwise are false.

104.     The written statement to Congregation members was sent with the intent to expose Ms. Shultz to contempt or aversion or generate an otherwise unsavory opinion of her in the minds of a substantial number of members of the Congregation.

105.      The written statement was also intended to impede Ms. Shultz's ability to obtain a new job, as the Congregation's statement conveys that Ms. Shultz is an unfaithful employee who makes false claims.

106.     Despite the Congregation's claim that Ms. Shultz "continues to remain employed in the exact same title," its most recent newsletter published in September 2015 conspicuously omits her as a listed "staff member" along with the other employees.  *See* http://shearithisrael.org/sites/default/files/2015/08/media/CSI_Bulletin_Fall_2015_final.pdf.

107.     In all prior newsletters, however, Ms. Shultz's name appears as a current staff member.  Defendants removed the newsletter from the above link after the Amended Complaint referenced it.

108.     On September 25, 2015, Ms. Shultz's counsel wrote to Defendants' counsel informing them that the public statements the Congregation has made that Ms. Shultz is still employed are false.

109.     Nonetheless, the Congregation has continued to attempt to discredit Ms. Shultz and her claim and portray Ms. Shultz as a liar.

110.    On October 29, 2015, the Congregation emailed and passed out to the Congregation members a newsletter that congratulated "Program Director, Alana Shultz" on the birth of her child.

111.    On November 2, 2015, the Congregation posted the same announcement on its website.

112.    Despite repeated notification by Ms. Shultz's counsel that Defendants are to cease and desist form communicating directly with Ms. Shultz, on November 4, 2015, Defendant Reiss included Ms. Shultz as the first recipient of an email concerning a staff meeting change.

113.    Since her termination, Ms. Shultz has not deposited any funds paid by the Congregation.   Rather, the Congregation is impeding her attempts to collect unemployment benefits.

114.     These continued acts are designed to discredit Ms. Shultz and to retaliate against her for complaining about Defendants' unlawful conduct and commencing litigation to enforce her statutorily protected rights.

### FIRST CAUSE OF ACTION
**(Discrimination in Violation of the FMLA)**
*Against All Defendants*

115.    Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

116.    At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA").  Ms. Shultz, a full-time employee of the Congregation, at all relevant times worked at least 1,250 hours in any 12-month period, and specifically, in the 12-month period preceding her termination.

117.    At all times relevant herein, Defendants were "covered employers" within the meaning of the FMLA.  Upon information and belief, the Congregation employs 50 or more employees in at least 20 calendar weeks within a 75 mile radius of the Congregation.

118.    As set forth above, the Congregation is a large organization with several thousand members.

119.    The Board of Trustees is comprised of at least 17 individuals and additionally has 13 honorary trustees.

120.    In addition to Rabbis, executive and office staff, the Congregation employees a multitude of individuals for its nursery school, youth programs, various programs, events dinners and luncheons.  By way of example only, the Congregation hires additional staff for its "Weekly Toddler Program," and the "Hebrew School."

121.    In addition to the examples listed above, the Congregation holds regular and special Shabbat dinners along with holiday events that require additional staff.

122.    At all relevant times, the Congregation exercises complete or partial control over the employees' work and working conditions.

123.    By the actions described above, among others, Defendants violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, *inter alia*, terminating her employment mere weeks before Plaintiff was scheduled to commence her 12-week leave to give birth and care for her newborn, an action that would clearly deter employees from exercising their rights under the FMLA.

124.    As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an

award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## SECOND CAUSE OF ACTION
### (Discrimination in Violation of Title VII)
### *Against Defendant Shearith Israel*

125.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

126.     By the actions described above, among others, Defendant Shearith Israel discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of Title VII by treating her differently from and less favorably than similarly situated employees who did not become pregnant.

127.     Defendants terminated Ms. Shultz within days after she provided notice to them that she was pregnant.

128.     Prior to telling Ms. Shultz that an alleged restructuring was needed on July 21, 2015, the same day that she was terminated, Defendants had never discussed the need for a possible restructuring with Ms. Shultz.

129.     Following her termination, Defendants told Ms. Shultz that she was expected to complete numerous assignments and tasks before she left.

130.     Based on the nature of many of these work tasks, it was clear that Defendants expected her to assist in the eventual transition of another individual to her position.

131.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
### *Against All Defendants*

132.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

133.     By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the New York State Human Rights Law, Article 15, § 290, *et. seq*., ("NYSHRL") by treating her differently from and less favorably than similarly situated employees who did not become pregnant.

134.     Defendants terminated Ms. Shultz within days after she provided notice to them that she was pregnant.

135.     Prior to telling Ms. Shultz that an alleged restructuring was needed on July 21, 2015, the same day that she was terminated, Defendants had never discussed the need for a possible restructuring with Ms. Shultz.

136.     Following her termination, Defendants told Ms. Shultz that she was expected to complete numerous assignments and tasks before she left.

137.     Based on the nature of many of these work tasks, it was clear that Defendants expected her to assist in the eventual transition of another individual to her position.

138.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
### *Against All Defendants*

139.    Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

140.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107, *et seq.* ("NYCHRL"), by treating her differently from and less favorably than similarly situated employees who did not become pregnant.

141.    Defendants terminated Ms. Shultz within days after she provided notice to them that she was pregnant.

142.    Prior to telling Ms. Shultz that an alleged restructuring was needed on July 21, 2015, the same day that she was terminated, Defendants had never discussed the need for a possible restructuring with Ms. Shultz.

143.    Following her termination, Defendants told Ms. Shultz that she was expected to complete numerous assignments and tasks before she left.

144.    Based on the nature of many of these work tasks, it was clear that Defendants expected her to assist in the eventual transition of another individual to her position.

145.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

146. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of NYSHRL and NYCHRL)
#### *Against Individual Defendants Soloveichik, Lustig and Reiss*

147. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

148. Defendant Soloveichik, Defendant Lustig and Defendant Reiss directly participated in the discriminatory conduct perpetrated against Plaintiff, including, but not limited to, the termination of Plaintiff's employment.

149. At all relevant times, Defendants Soloveichik, Lustig and Reiss supervised Plaintiff and/or had the ability to control the terms and conditions of her employment, including, but not limited to, the power to terminate Plaintiff's employment.

150. At all relevant times, Plaintiff reported to Defendants Soloveichik, Lustig and Reiss.

151. Defendants Soloveichik and Lustig summoned Plaintiff into Defendant Soloveichik's office and forced her to submit to the news of her termination based on a pretextual claim of a restructuring at the Congregation.

152. Defendants Soloveichik and Lustig refused to respond to her reasonable and justified claim that she would not be able to find new employment given her obvious state of pregnancy.

153. Defendant Reiss conveyed the termination news to Plaintiff in a meeting with Defendants Soloveichik and Lustig.

154.    As a direct and proximate result of the unlawful and discriminatory conduct committed by Defendants Soloveichik, Lustig and Reiss in violation of the NYSHRL and NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

155.    Defendant Soloveichik's, Defendant Lustig's and Defendant Reiss' conduct was unlawful and discriminatory and as such constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION
**(Constructive Discharge)**
*Against All Defendants*

156.    Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

157.    Defendants' discriminatory termination, visible contempt, disingenuous offer of re-instatement, among other facts and circumstances, caused Ms. Shultz's working conditions to become so intolerable that a reasonable person in Ms. Shultz's situation would have felt compelled to cease working at the Congregation.

158.    Defendants' discriminatory termination, visible contempt, disingenuous offer of re-instatement, among other facts and circumstances demonstrating retaliation, caused Ms. Shultz's working conditions to become so intolerable that a reasonable person in Ms. Shultz's situation would have felt compelled to reject the conditional "re-hire" offer and resign.

159.    Defendants' conduct was at all times deliberate and intentional.

160.    Based on the foregoing, Ms. Shultz was constructively discharged.

161.    As a direct and proximate result of the constructive discharge, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

**SEVENTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYSHRL)**
*Against All Defendants*

162.    Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

163.    By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYSHRL by, *inter alia*, publicly sending an email to more than 500 members of the Congregation stating that Ms. Shultz's complaints are false and that she is a current employee who, as of September 25, 2015, is "employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along," when Defendants knew, or should have known, that she was no longer employed at the Congregation after August 14, 2015.

164.    Defendants sent this email on September 25, 2015, after Ms. Shultz had filed her complaint in this action.

165.    Defendants further retaliated against Ms. Shultz by stating in the same email that "Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur."  Although Defendants were under no obligation to respond publicly, reports of the lawsuit were widespread by early afternoon on September 22, 2015, days before the start of Yom Kippur.

166.    This statement is further conduct evidencing Defendants' attempt to retaliate against Plaintiff for engaging in protected activity.

167.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

168.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

### EIGHTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
*Against All Defendants*

169.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

170.     By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYCHRL by, *inter alia*, publicly sending an email to more than 500 members of the Congregation stating that Ms. Shultz's complaints are false and that she is a current employee who, as of September 25, 2015, is "employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along," when Defendants knew, or should have known, that she was no longer employed at the Congregation after August 14, 2015.

171.     Defendants sent this email on September 25, 2015, after Ms. Shultz had filed her complaint in this action.

172.     Defendants further retaliated against Ms. Shultz by stating in the same email that "Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press

inquiries in the hours before Yom Kippur." Although Defendants were under no obligation to respond publicly, reports of the lawsuit were widespread by early afternoon on September 22, 2015, days before the start of Yom Kippur.

173. This statement is further conduct evidencing Defendants' attempt to retaliate against Plaintiff for engaging in protected activity.

174. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

175. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

176. Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**NINTH CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**
*Against Defendant Shearith Israel*

177. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

178. By the actions described above, among others, Defendant Shearith Israel retaliated against Plaintiff on the basis of her protected activities in violation of Title VII by, *inter alia*, publicly sending an email to more than 500 members of the Congregation stating that Ms. Shultz's complaints are false and that she is a current employee who, as of September 25,

2015, is "employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along," when Defendants knew, or should have known, that she was no longer employed at the Congregation after August 14, 2015.

179.   Defendants sent this email on September 25, 2015, after Ms. Shultz had filed her complaint in this action.

180.   Defendants further retaliated against Ms. Shultz by stating in the same email that "Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur."  Although Defendants were under no obligation to respond publicly, reports of the lawsuit were widespread by early afternoon on September 22, 2015, days before the start of Yom Kippur.

181.   This statement is further conduct evidencing Defendants' attempt to retaliate against Plaintiff for engaging in protected activity.

182.   As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

183.   As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

# TENTH CAUSE OF ACTION
## (Defamation)
### *Against All Defendants*

184.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

185.     By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYCHRL by, *inter alia*, publicly sending an email to more than 500 members of the Congregation stating that Ms. Shultz's claims are false and that:

> Congregation Shearith Israel did not terminate her employment. **She continues to remain employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along. Her claim of loss is fabricated and inaccurate. She has received (and continues to receive to this very day) every penny, including for health benefits - even though she has not been to work since August 14th**. It is unfortunate that Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur.

186.     Defendants sent this email on September 25, 2015 and knew, or should have known, that she was no longer employed at the Congregation after August 14, 2015.

187.     Further, Defendants sent this email on September 25, 2015, after Ms. Shultz had filed her complaint in this action and continue to assert that Ms. Shultz continues to be employed at the Congregation.

188.     The written statement was made with ill-will and reckless disregard towards Ms. Shultz.

189.     The written statement was published with the intent to expose Ms. Shultz to contempt or aversion or generate an otherwise unsavory opinion of her in the minds of a substantial number of members of the Congregation, and to cause injury to her reputation.

190.     As a direct and proximate result of Defendants' unlawful defamation, Plaintiff has suffered injury and harm, including, but not limited to, harm to her reputation, and continues to suffer mental and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of New York and the City of New York;

B.     An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C.     An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D.     An award of punitive damages in an amount to be determined at trial;

E.     An award of liquidated damages in an amount to be determined at trial;

F.     Prejudgment interest on all amounts due;

G.     An award of Plaintiff's reasonable attorneys' fees and costs; and

H.     Such other and further relief as the Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.


Dated: March 10, 2016
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
Jeanne M. Christensen
Bryan L. Arbeit

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
jchristensen@wigdorlaw.com
barbeit@wigdorlaw.com

*Counsel for Plaintiff*