```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
  ALANA SHULTZ,                                             :
                                      Plaintiff,            :
                                                            :
              -v-                                           :
                                                            :
  CONGREGATION SHEARITH ISRAEL OF                           :     15-CV-7473 (JPO)
  THE CITY OF NEW YORK, THE SPANISH                         :
  AND PORTUGUESE SYNAGOGUE; MEIR                            :     OPINION AND ORDER
  SOLOVEICHIK, in his personal and                          :
  professional capacities; and MICHAEL                      :
  LUSTIG, in his personal and professional                  :
  capacities,                                               :
                                                            :
                                      Defendants.           :
-----------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff Alana Shultz filed this action against Congregation Shearith Israel of the City of New York, the Spanish and Portuguese Synagogue (the "Congregation"), Meir Soloveichik, Michael Lustig, and Barbara Reiss (collectively, "Defendants") on September 22, 2015. Shultz alleges that Defendants discriminated and retaliated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), New York State law, and New York City law. She also asserts claims for defamation and for interference with rights protected by the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612(a). Defendants move to dismiss each claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted.

**I.     Background**

Unless otherwise noted, the following facts are taken from the Third Amended Complaint (Dkt. No. 56 ("Compl.")) and are assumed true for the purpose of this motion.

The Congregation is the oldest Jewish congregation in the United States. (Compl. ¶ 1.) Soloveichik is one of its Rabbis; Lustig is a member of its Board of Trustees; and Reiss is its Executive Director. (Compl. ¶¶ 22-24.) Shultz worked as the Congregation's Program Director from 2004 to 2015. (Compl. ¶ 25.) Her duties included "planning and coordinating events" and "helping to organize the nursery school program." (Compl. ¶ 25.)

Shultz was married on June 28, 2015. (Compl. ¶ 53.) At the time of her marriage, she was pregnant. (*Id.*) Before leaving for her honeymoon, Shultz told Reiss that she was pregnant and asked her to inform the Congregation's Rabbis. (Compl. ¶ 54.) Shultz returned from her honeymoon on July 20, 2015. (Compl. ¶ 56.) The next morning, Reiss inquired about Shultz's pregnancy, and the two employees "spoke in detail." (Compl. ¶ 58.) Reiss then asked Shultz to meet with her, Soloveichik, and Lustig. (Compl. ¶ 59.) At that meeting, Reiss told Shultz that she was terminated, effective August 14, 2015, "because the Congregation was 'eliminating' her position." (Compl. ¶ 62.) Shultz responded that "being fired when she was pregnant and visibly showing would make it extremely difficult, if not impossible, [for her] to obtain a new job." (Compl. ¶ 66.) Her statement "was met with complete silence" by Soloveichik and Lustig, who "refused to speak to [her]" throughout the encounter. (Compl. ¶¶ 66-67.)

Reiss then presented Shultz with a severance agreement, which offered her six weeks of pay in exchange for "a complete waiver of [her] right to commence an action for pregnancy or gender discrimination or a claim pursuant to the FMLA." (Compl. ¶¶ 69-70.) Shultz, who believed that the restructuring "was a pretextual excuse to terminate her because Defendants disapproved of the fact that she was pregnant at the time of her marriage," retained counsel and, on July 30, 2015, informed the Congregation that she had hired a lawyer "for her claims arising from gender and pregnancy discrimination." (Compl. ¶¶ 74-76.) Six days later, Reiss gave

Shultz a letter reinstating her to her position as Program Director (the "rescission letter"). (Compl. ¶ 79.)

Shultz asserts that the rescission letter was not "not a bona fide offer of unconditional reinstatement." (Compl. ¶¶ 80-81.) To support this assertion, she alleges that, after she received the letter: (1) she overhead a phone call in which Reiss told Lustig that, "as an orthodox synagogue, Defendants 'had a right to disapprove of the fact that [she] was pregnant before her wedding"; (2) she heard Reiss tell Lustig that Shultz was "looking for a lottery ticket" and had "no problem having this [legal claim] out in the community"; (3) Soloveichik and Lustig did not speak to her; and (4) Reiss "continued to instruct her to complete tasks prior to departure and [to] transition [her] responsibilities to other employees." (Compl. ¶¶ 82-94.) Shultz did not return to work at the Congregation after August 14, 2015. (Compl. ¶ 94.)

Following Shultz's departure, Defendants instructed the Congregation's employees "not to contact [Shultz] with questions." (Compl. ¶ 97.) On September 25, 2015, three days after Shultz filed suit and one day after Shultz effected service on Defendants, the Congregation sent an email to its 500-plus person membership. (Compl. ¶ 99.) The email stated:

> Congregation Shearith Israel categorically denies Ms. Shultz's allegations of discrimination or of doing anything wrong. In addition, Congregation Shearith Israel did not terminate her employment. She continues to remain employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along. Her claim of loss is fabricated and inaccurate. She has received (and continues to receive to this very day) every penny, including for health benefits – even though she has not been to work since August 14th. It is unfortunate that Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur.

(Compl. ¶ 99.) The Congregation continued to issue paychecks to Shultz and to list her as a Program Director in its publications after August 14, 2015. (Compl. ¶¶ 106-113; see also Dkt. Nos. 59-60.)

**II.     Legal Standard**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). In determining whether this standard is satisfied, courts assume that all "factual allegations contained in the complaint" are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).

**III.    Discussion**

Shultz asserts claims under Title VII, the FMLA, New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* (the "NYSHRL"), New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.* (the "NYCHRL"), and New York defamation law. Her first set of claims is based on her alleged termination by the Congregation. Shultz argues that Defendants discriminated against her in violation of Title VII, the NYSHRL, and the NYCHRL by firing her because she became pregnant before she was married.[1] She argues in the alternative that, even if Defendants did not fire her, they constructively discharged her by rendering her workplace

---

[1] Shultz's first three complaints, which she filed before the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue notice, did not include Title VII claims. (*See* Dkt. No. 35 at 10 n.5.) After the EEOC issued that notice, Shultz filed the Third Amended Complaint, adding Title VII claims. (Dkt. No. 56.) The parties thereafter agreed that Defendants' arguments for dismissal of the NYSHRL claims in Shultz's Second Amended Complaint applied with equal force to her Title VII claims, and Defendants opted to rest on their previously filed motion to dismiss. (*See* Dkt. No. 55.)

conditions intolerable. Finally, Shultz asserts that, by firing or constructively discharging her, Defendants interfered with her right to take FMLA-protected leave.

Shultz's second set of claims concerns the email the Congregation circulated to its membership in September 2015. She argues that the email constituted retaliation in violation of Title VII, the NYSHRL, and the NYCHRL. Shultz also asserts a defamation claim based on the Congregation's statements.

The Court begins with Shultz's federal claims.

### A. Title VII Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a claim for employment discrimination under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "'[A]t the initial stage of the litigation' in a Title VII case, 'the plaintiff does not need substantial evidence of discriminatory intent.'" *Johnson v. Andy Frain Servs., Inc.*, No. 15-1143, 2016 WL 210098, at *1 (2d Cir. Jan. 19, 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "Rather, what must be plausibly supported by the facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* (citations and internal quotation marks omitted).

The dispositive question in this case is whether Shultz has plausibly alleged adverse employment action. Shultz alleges that Defendants fired her because of her pregnancy, and thus, because of her sex. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1343 (2015) ("Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."). Defendants concede that Shultz is a member of a protected class and that firing someone is adverse action. But they dispute that Shultz was fired "or subject to any other adverse employment action." (Dkt. No. 29 at 10.) Specifically, Defendants argue that, because they rescinded Shultz's termination prior to her last day of work and reinstated her "under the same terms and conditions of employment [she] previously enjoyed," Shultz has not pleaded actionable adverse employment action. (*Id.*)

Under Second Circuit precedent, adverse employment action is a "materially adverse change in the terms and conditions of employment." *Chung v. City of New York*, 605 F. App'x 20, 22 (2d Cir. 2015) (quoting *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). "Such a change must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Sanders*, 361 F.3d at 755). Recognized examples of adverse employment action include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal quotation marks and citation omitted).

There is no question that the termination of Shultz on July 21, 2015, by itself, would constitute adverse employment action. However, Defendants gave her a letter explicitly rescinding that termination shortly thereafter—and more than a week before the termination was

to take effect.  The question is whether her claim survives in light of the Congregation's rescission letter and subsequent conduct.

In analyzing claims concerning rescinded terminations, courts in this Circuit have considered whether the rescission reinstated plaintiff to her previous position, or alternatively, had lasting "adverse consequences." *Conkling v. Brookhaven Science Assoc., LLC*, No. 10-CV-4164, 2012 WL 2160439, at *4 (E.D.N.Y. June 12, 2012) ("[W]hile a termination that is rescinded with no other adverse consequences does not constitute adverse employment action, that is not what happened here.  Although [p]laintiff's termination was rescinded, she was not reinstated to her previous position or salary.") (internal citations omitted); *see also Santiesteban v. Nestle Waters N. Am., Inc.*, 61 F. Supp. 3d 221, 235 (E.D.N.Y. 2014) (holding that a "withdrawn write up" was not adverse action); *Cheshire v. Paulson*, No. 04-CV-3884, 2007 WL 1703180, at *6 (E.D.N.Y. June 12, 2007) (holding that there was no adverse action where a proposed suspension and termination was rescinded); *Butler v. Potter*, No. 06-CV-3828, 2009 WL 804722, at *13 (E.D.N.Y. Mar. 26, 2006) ("[T]he proposed notice of termination . . . is not a materially adverse action because it is undisputed that it was expunged and there was no adverse consequence to Butler, such as the loss of payment or time."); *Incarnato v. Tops Friendly Markets, LLC*, No. 04-CV-6599, 2006 WL 1330103, at *5 (W.D.N.Y. May 15, 2006), *aff'd*, 226 F. App'x 53 (2d Cir. June 4, 2007) ("While termination from employment certainly constitutes an adverse employment action, where the termination is rescinded, and the plaintiff is offered re-employment under the same conditions as she previously enjoyed, the plaintiff cannot establish that her employment was terminated.").  In determining whether a plaintiff suffered "adverse consequences" after a rescinded termination, courts have focused on whether the defendant

restored the plaintiff to her previous salary, title, and benefits. *Conkling*, 2012 WL 2160439, at *4; *see also Butler*, 2009 WL 804722, at *13.

Courts outside this Circuit have taken a similar approach to adverse employment action. *See id.* (collecting cases); *Keeton v. Flying J, Inc.*, 429 F.3d 259, 263 (6th Cir. 2005) ("[W]hen an otherwise adverse employment action is rescinded before the employee suffers a tangible harm, the employee has not suffered an adverse employment action.") The Second Circuit appears to have approved this approach as well. In *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F. 3d 556, 570 (2d Cir. 2011), an employee who had filed grievances about workplace harassment was given a disciplinary "counseling letter" concerning safety protocols, which his employer later rescinded. *Id.* at 564. The employee alleged that the counseling letter was adverse action taken in retaliation for his complaints.[2] *Id.* at 570. The Second Circuit rejected this argument because, among other reasons, "the counseling was rescinded." *Id.* (citations omitted). Noting that it did not "hold that rescinded discipline can *never* constitute materially adverse action," the court nonetheless concluded that there was no adverse action in that case. *Id.*

These cases establish that a rescinded termination does not constitute adverse action under Title VII, at least where the employee is restored to her prior position and salary with no gap in employment and with no other tangible harm or material change in the conditions of employment.

---

[2] While *Tepperwien* concerned adverse action in the context of Title VII retaliation, the court's analysis of rescinded employer conduct relied on a number of Title VII discrimination cases. *See Tepperwein*, 663 F.3d at 570 (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006), and *Sanders*, 361 F.3d at 756). As noted below, the term "adverse action" is broader in the context of retaliation than it is in the context of discrimination. *See Hicks v. Baines*, 593 F. 3d 159, 165 (2d Cir. 2010); *Hahn v. Bank of Am. Inc.*, No. 12-CV-4151, 2014 WL 1285421, at *14 (S.D.N.Y. Mar. 31, 2014).

Apart from the termination itself (which was rescinded before it took effect), the facts alleged in this case are sparse.  Shultz asserts, in sum, that after she received the rescission letter: (1) she overheard a phone call in which Reiss "disparaged" her and her lawyers; (2) Reiss required her to complete "her regular and customary work assignments ahead of schedule"; (3) the Congregation removed her name from a wall and a synagogue membership newsletter, but later listed her in newsletters and stated that she continued to be employed; and (4) Soloveichik and Lustig did not speak to her and "noticeably failed to congratulate her on her pregnancy." (Compl. ¶¶ 82-107.)  Shultz does not allege that the Congregation changed her title, salary, or benefits, nor does she allege any gap in her pay.  She does not plead any factual context about whether she typically spoke with Soloveichik and Lustig in the course of her employment, and thus, whether it was unusual not to speak to them.  She does not explain how Defendants made "clear . . . that her continued employment was conditional."  (Compl. ¶ 81.)  And, while she asserts that she knew "that Defendants would use every opportunity to berate and shame her," she does not allege facts, beyond those listed above, to explain or support that assertion.  (Compl. ¶ 85.)

None of the post-rescission conduct alleged by Shultz constitutes adverse action under the governing law.  Neither the acceleration of an employee's customary job duties nor the failure to congratulate an employee on her pregnancy is adverse employment action.  *See Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013) (noting that disparaging remarks and "shunning by [plaintiff's] colleagues" did not constitute adverse employment action); *Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ("Changes in assignments or responsibilities that do not 'radical[ly] change' the nature of work are not typically adverse employment actions.") (quoting *Galabya v. New York City Bd. of Educ.*, 202

F.3d 636, 640 (2d Cir. 2000)); *Davis v. Verizon Wireless*, 389 F. Supp. 2d 458, 478 (W.D.N.Y. 2005) ("[B]eing shunned by co-workers does not constitute an adverse employment action."). Similarly, disparaging comments made in one phone call overheard by Shultz do not constitute adverse action as that term is defined in the Second Circuit. *See Mills*, 519 F. App'x at 75; *Albuja v. Nat'l Broad. Co. Universal, Inc.*, 851 F. Supp. 2d 599, 606 (S.D.N.Y. 2009); *Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 619-20 (S.D.N.Y. 2009) (discussing "unfavorable criticism" and "rushed work assignment[s]" in the context of Title VII discrimination claims).

At oral argument, Shultz's counsel insisted that Defendants' letter rescinding the termination was not a "bona fide" offer of reinstatement. This argument fails for the same reasons discussed above. In light of the employer's letter unconditionally rescinding the termination, Shultz must allege specific *facts* plausibly showing that her termination was *not* genuinely being rescinded—either a change in her salary or title or some tangible, material adverse change in her employment conditions. She has failed to allege such facts. The bare allegation in the Complaint that the rescission was not "bona fide" is a legal conclusion, not a factual allegation. To the extent that Plaintiff's counsel is assuming that a "bona fide" rescission of a termination must be sincere or heartfelt—in the sense that the employer must subjectively *want* to rescind the termination and retain the employee—that assumption is unfounded under the law. An employer may validly rescind a termination merely to avoid liability, even begrudgingly, so long as the employer restores the employee to her position with no material change or consequence.

Even assuming the truth of Shultz's allegations, and drawing all inferences in her favor, the Court concludes that Shultz has not plausibly alleged adverse employment action. To the

extent that she alleges discrimination based on the termination of her employment or post-rescission adverse employment action, Shultz has failed to state a claim.

B. **Constructive Discharge**

Shultz's primary theory of VII liability is that the Congregation fired her. She argues in the alternative that she was constructively discharged. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (citation and internal quotation marks omitted).

Plaintiffs alleging constructive discharge "face a demanding standard."[3] *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014) (internal quotation marks omitted); *see Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 725 (E.D.N.Y. 2015) ("Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case.") (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 149 (2004)); *Early v. Wyeth Pharmaceuticals, Inc.*, 603 F. Supp. 2d 556, 582 (S.D.N.Y. 2009) ("A constructive discharge claim may be viewed as an aggravated case of hostile work environment.") (citation and internal quotation marks omitted). To succeed on a constructive discharge claim, an employee must show, first, that her employer created an intolerable environment that forced her to resign, and second, that a reasonable person in her circumstances would have found the work conditions so intolerable as to compel resignation. *Adams v. Festival Fun Parks, LLC*, 560 F.

---

[3] *Pryor* discusses the "demanding" standard for constructive discharge claims asserted under the NYSHRL. *Pryor*, 992 F. Supp. 2d at 262. The same standard applies here because "[c]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII of the Civil Rights Act of 1964." *Id.* at 256 (quoting *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997)) (alternations omitted).

App'x 47, 49-50 (2d Cir. 2014) (citing *Petrosino v. Bell Atlantic*, 385 F. 2d 210, 213 (2d Cir. 2004)); *see also Edwards v. Huntington Union Free Sch. Dist.*, 957 F. Supp. 2d 203, 213 (E.D.N.Y. 2013) ("[C]onstructive discharge requires more than the employee finding the employment environment to be "very uncomfortable"—the work environment must be "intolerable.") (quoting *Petrosino*, 385 F. 2d at 230).

For the reasons already discussed, Shultz has not met this high bar. Shultz alleges one disparaging phone call, accelerated work assignments, a failure to congratulate her on her pregnancy, and inconsistent public treatment of her employment status, culminating in her being *included* in Congregation newsletters. She also asserts that Soloveichik and Lustig disapproved of her, but as noted above, does not allege facts to support or contextualize this conclusory assertion. Given the high standard for constructive discharge claims, Shultz has not plausibly alleged that Defendants created an environment so intolerable as to compel her resignation. *See Febrianti v. Worldwide*, No. 15-CV-0635, 2016 WL 502027, at *6 (S.D.N.Y. Mar. 7, 2016) (Furman, J.) (dismissing a constructive discharge claim); *Dowrich-Weeks v. Cooper Sq. Realty, Inc.*, No. 11-CV-5966, 2012 WL 3826981, at *4 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 535 F. App'x 9 (2d Cir. 2013) (same); *Mohamed v. NYU*, No. 14-CV-8373, 2015 WL 5307391, at *4 (S.D.N.Y. Sept. 10, 2015) (same); *De La Pena v. Metro. Life. Ins. Co.*, 953 F. Supp. 2d 393, 419 (E.D.N.Y. 2013) (same). Her constructive discharge claim is therefore dismissed.

  **C. FMLA Claim**

Shultz third claim is that Defendants violated her right to take leave protected by the FMLA. "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4)

that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). While a plaintiff need not establish a *prime facie* case of FMLA interference at the initial pleading stage, her claim must be plausible to survive a motion to dismiss. *See Ross v. State of New York*, No. 15-CV-3286, 2016 WL 626561, at *8 n.8 (S.D.N.Y. Feb. 16, 2016) (discussing the pleading standard for FMLA claims).

Shultz's sole theory of FMLA liability is that, in firing or constructively discharging her, Defendants "impeded her ability to continue employment and take [protected] leave." (Dkt. No. 35 at 27.) She offers no other argument as to how Defendants denied her benefits protected by the FMLA. For reasons already stated, Shultz has not plausibly alleged that she was terminated, constructively discharged, or otherwise subject to post-rescission adverse employment action.[4] She has thus failed to plausibly allege that Defendants denied her leave, and accordingly, has failed to state an interference claim.

### D. Title VII Retaliation

Shultz's final federal claim is that Defendants retaliated against her in violation of Title VII. A *prima facie* case of retaliation under Title VII requires evidence showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). A plaintiff need not plead facts sufficient to establish a *prima facie* case to

---

[4] Defendants also argue that Shultz has not alleged that she gave the Congregation notice of her intent to take FMLA leave. (Dkt. No. 29 at 20.) In light of the conclusion that Shultz has not plausibly pleaded that the Congregation denied her leave, the Court need not address this alternative argument for dismissal.

13

survive a motion to dismiss.  *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (Lynch, J.).  But the complaint must contain factual allegations that provide "plausible support" for a *prima facie* case of retaliation, *Littlejohn*, 795 F.3d at 316, and thus, "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

Shultz alleges that Defendants retaliated against her for retaining counsel, threatening to sue, and filing this lawsuit.  *See Mandel v. Rafe*, No. 10-CV-6045, 2012 WL 1981453, at *5 (S.D.N.Y. May 31, 2012) (noting that retaining counsel and threatening to sue are protected activities).  In her moving papers, she argues that Defendants retaliated by: (1) "continu[ing] to . . . discriminate against [her] for complaining about discrimination after she retained counsel"; (2) "engag[ing] in a campaign of disparaging and defaming statements after she complained of discrimination"; and (3) claiming to employees and the Congregation's membership that she was employed beyond her last day at work.  (Dkt. No. 35 at 17-18.)  In her Third Amended Complaint, Shultz also alleges that the Congregation retaliated against her by stating in the September 2015 email to its membership that she was still employed and that she "took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur."  (Compl. ¶ 180.)  Defendants argue that none of these acts constitutes adverse employment action and that none of their conduct was retaliatory, *i.e.*, causally connected to Shultz's protected activity.

Defendants' argument prevails.  The allegation that Defendants "continued to . . . discriminat[e]" against Shultz after she retained counsel is conclusory.  Moreover, it undermines, rather than supports, any plausible inference that there was a causal connection between Defendants' conduct and her protected activity.  By alleging "continued" conduct, Shultz is arguing that Defendants persisted in actions that pre-dated her retention of counsel.  In the

14

absence of an assertion that Defendants engaged in adverse action *after* and *in response to* her decision to seek a lawyer and assert her rights under Title VII, Shultz has not adequately pleaded that Defendants acted in retaliation for her threat of legal action.

With respect to Shultz's other allegations, while she asserts the existence of a "campaign" of disparaging statements, Shultz's specific factual allegations are that: (1) she overheard offensive statements Reiss made in a phone call with Lustig; (2) the Congregation told employees not to contact her after her last day at work; (3) the Congregation told its employees and members that she was still employed after August 14, 2015; and (4) the Congregation's email to its members accused her of taking advantage of a religious holiday and filing a "fabricated and inaccurate" claim. (Compl. ¶ 99.) The question is whether these statements constitute adverse action.

The term "adverse action" is broader in the context of retaliation than it is in the context of Title VII discrimination. *See Hicks*, 593 F. 3d at 165 (2d Cir. 2010) ("Title VII's anti-discrimination and anti-retaliation provisions are not coterminous; anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harm.") (citation and internal quotation marks omitted). For the purpose of a retaliation claim, employer conduct is actionable when it is "materially adverse to a reasonable employee." *Id*. (citation and internal quotation marks omitted). Employer conduct meets this standard when it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Bowen-Hooks*, 13 F. Supp. 3d at 224. "Actions that are 'trivial harms'—*i.e.,* 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse." *Tepperwien*, 663 F.3d at 568 (quoting

*Burlington*, 548 U.S. at 68). Thus, "Title VII does not protect an employee from 'all retaliation,' but only 'retaliation that produces an injury or harm.'" *Id.* (quoting *Burlington*, 548 U.S. at 67).

Shultz has not plausibly alleged adverse action sufficient to support a retaliation claim. Shultz asserts, in sum, that Defendants inaccurately stated that she was still employed and encouraged employees not to contact her after her last day of work, that she overheard offensive comments made by her boss, and that the Congregation distributed a strong statement about her lawsuit after it had been filed. Even viewed together, and in the light most favorable to Shultz, these allegations do not meet the governing standard for materially adverse action. *See Burlington*, 548 U.S. at 68 ("[P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable . . . ."); *Hicks*, 593 F. 3d at 167 (affirming dismissal of retaliation claims based on conclusory allegations of "workplace sabotage"); *Tepperwein*, 663 F. 3d at 571 (holding that a supervisor's statement that "there are people here I don't like," made while staring at the plaintiff, was not materially adverse action); *Vazquez v. Southside United Dev. Fund. Corp.*, No. 06-CV-5997, 2009 WL 2596490, at *12 (E.D.N.Y. Aug. 21, 2009) (holding that a supervisor's comment that plaintiff was a "traitor" who should be fired, "while unprofessional and offensive," were not materially adverse actions); *Martinez v. New York City Dep't of Educ.*, No. 04-CV-2728, 2008 WL 2220638, at *12 (S.D.N.Y. May 27, 2008) (concluding that "incidents where [defendant] publicly yelled at [p]laintiff for various reasons" and called him derogatory names were not actionable). Shultz's Title VII retaliation claim is therefore dismissed.

### E. State- and City-Law Claims

Shultz's remaining claims arise under state and city law. Because it has dismissed all of Shultz's federal claims, the Court declines to exercise supplemental jurisdiction over these non-

16

federal claims.  *See Oneida Indian Nation of New York v. Madison Cty.*, 665 F. 3d 408, 436-37 (2d Cir. 2011) ("Although federal courts may exercise jurisdiction over related state-law claims . . . a court may . . . nonetheless decline to exercise supplemental jurisdiction over a claim [where] . . . the district court has dismissed all claims over which it has original jurisdiction.") (citation and internal quotation marks omitted); *Valencia ex rel. Franco v. Lee*, 316 F. 3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Given the early stage of this litigation, the Court concludes that the *Cohill* factors support the decision to decline supplemental jurisdiction in this case.  *Id.*

### F. Leave to Amend

At oral argument, counsel for Shultz requested leave to amend the complaint in the event that the Court grants the motion to dismiss.  Although the operative complaint is her Third Amended Complaint, Shultz has not yet had an opportunity to amend in light of the specific issues addressed in this opinion.  Therefore she will be granted to leave to file an amended complaint if she has a good faith basis for alleging facts that are sufficient to state a claim under the standards discussed above.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Court dismisses the federal claims for failure to state a claim under Rule 12(b)(6) and dismisses the state- and city-law claims without prejudice because the Court declines to exercise supplemental jurisdiction over those claims.

Plaintiff is granted leave to file a Fourth Amended Complaint provided that she does so on or before September 15, 2016.

The Clerk of Court is directed to close the motion at Docket Number 26.

SO ORDERED.

Dated: August 15, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge